Argued and submitted October 10, 2019; penalty vacated and remanded, otherwise affirmed September 23, 2020

OREGON OCCUPATIONAL SAFETY
& HEALTH DIVISION (OR-OSHA),
*Respondent*
*Cross Petitioner,*

*v.*

STAHLBUSH ISLAND FARMS, INC.,
*Petitioner*
*Cross Respondent.*

Workers' Compensation Board
1600039SH; A167959

475 P3d 114

Petitioner Stahlbush Island Farms seeks judicial review of an order of an administrative law judge (ALJ) for the Workers' Compensation Board upholding a citation issued to petitioner by the Oregon Occupational Safety Health Administration (OR-OSHA) for a safety violation and assessing a penalty. OR-OSHA cross-petitions for judicial review, contending that the order erroneously reduced the penalty for the violation. *Held*: Reviewing the board's order for substantial evidence and errors of law, ORS 654.290(2); ORS 183.482(8)(a), the Court of Appeals concluded that OR-OSHA's determination that petitioner had committed a violation was supported by substantial evidence and substantial reason. But the court determined that the board had erred in modifying the penalty that had been determined by the compliance officer.

Penalty vacated and remanded; otherwise affirmed.

Ben C. Fetherston, Jr., argued the cause for petitioner-cross-respondent. Also on the opening brief was Fetherston Edmonds, LLP. Also on the answering brief were Kathryn H. Pawlick and Fetherston Edmonds, LLP.

Colm Moore, Assistant Attorney General, argued the cause for respondent-cross-petitioner. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Penalty vacated and remanded; otherwise affirmed.

**TOOKEY, J.**

Petitioner Stahlbush Island Farms seeks judicial review of an order of an administrative law judge (ALJ) for the Workers' Compensation Board upholding a citation issued to petitioner by the Oregon Occupational Safety Health Administration (OR-OSHA) for a safety violation and assessing a penalty.[1] OR-OSHA cross-petitions for judicial review, contending that the order erroneously reduced the penalty for the violation. We review the board's order for substantial evidence and errors of law, ORS 654.290(2); ORS 183.482(8)(a). We conclude that the ALJ did not err in upholding OR-OSHA's determination that petitioner had committed a violation, but that the ALJ did err in modifying the penalty that had been determined by the compliance officer. We therefore affirm the citation but vacate and remand the order for reconsideration of the penalty.

The facts are largely undisputed. Petitioner is an agricultural employer that grows and processes agricultural product. One piece of processing equipment is a "steam peeler." A conveyor belt carries agricultural product from the floor level up to an opening at the top of a "hopper," a metal tub or container that sits above an elevated platform that is approximately 12 feet above the floor. The hopper is open at the bottom, where a second conveyor belt is mounted and carries agricultural product through a gate to the steam peeler.[2] The hopper's conveyor belt is recessed within the side panels of the hopper. The platform under the hopper is approximately six inches below the hopper's conveyor belt. It surrounds the hopper on all sides with approximately three feet of walkway.

Agricultural product sometimes falls onto the platform surrounding the hopper. Approximately twice per shift, an employee must climb a ladder to the platform and clear the agricultural product. Petitioner's employee was standing

---

[1] OR-OSHA is a division of the Department of Consumer and Business Services. OR-OSHA's contested case hearings are conducted by an ALJ for the Hearings Division of the Workers' Compensation Board, and the ALJ's order is the final order of the board. ORS 654.290(2)(b).

[2] The compliance officer who investigated the injury referred to the hopper as a "transition bin," because it transferred agricultural product from one conveyor to another.

on the platform and clearing agricultural product that had fallen onto the platform around the hopper's conveyor. The conveyor is on a timer and runs for seven seconds every two to three minutes. When the employee climbed onto the platform, the conveyor was not running, but employees had noticed that, when it was running, the conveyor's rollers were turning, but the belt was not moving. To try to cause the belt to move, petitioner's employee pushed on the underside of the belt with his foot, and it suddenly began to move. The employee could not pull his foot away before it got caught and seriously injured at the point where the belt moves over the belt roller, known as the "ingoing nip point."

OR-OSHA, a division of the Department of Business and Consumer Services (DCBS), is charged with enforcing the Oregon Safe Employment Act (OSEA), which requires every employer to

> "furnish employment and a place of employment which are safe and healthful for employees therein, and shall furnish and use such devices and safeguards, and shall adopt and use such practices, means, methods, operations and processes as are reasonably necessary to render such employment and place of employment safe and healthful, and shall do every other thing reasonably necessary to protect the life, safety and health of such employees."

ORS 654.010. The OSEA authorizes the director of DCBS to "[d]eclare and prescribe what devices, safeguards or other means of protection and what methods, processes or work practices are well adapted to render every employment and place of employment safe and healthful." ORS 654.035.

As authorized by the director of DCBS, OR-OSHA has adopted OAR 437-004-1910(4)(a)(A), which requires that agricultural employers protect employees from contact with moving machinery parts by "a guard or shield or guarding by location." OAR 437-004-1970(4)(a), relating to "farmstead" equipment, requires the guarding of all "nip points of all power driven gears, belts, chains, sheaves, pulleys, sprockets, and idlers by protective shield, location, guardrail or fence." Thus, by administrative rule, a "nip point" is a moving machinery part that must be "guarded."

It is undisputed that, at the relevant time, the nip point of the hopper conveyor belt was not guarded by a physical guard or shield. A moving machinery part need not be guarded by a physical guard if it is "guarded by location." A moving machinery part is guarded by location if, "because of its location, no employee can inadvertently come in contact with the hazard." OAR 437-004-1910(6).

A hazard is defined as a "condition, practice, or act that could result in an injury or illness to an employee." OAR 437-001-0015(36). After an investigation by a compliance officer, OR-OSHA determined that the ingoing nip point was a hazard that could be inadvertently contacted by an employee working on the platform and that, therefore, was not guarded by location. OR-OSHA cited petitioner for a violation of OAR 437-004-1910(4)(a)(A).

Petitioner requested a hearing, contending that the nip point was guarded by location as a result of the belt's recessed placement within the frame of the hopper, which, petitioner contended, made it impossible for either the belt or the nip point to be contacted inadvertently.

OR-OSHA presented testimony from the compliance officer. The compliance officer testified that a moving machinery part is guarded by location if, from the workspace, a person would not be exposed to the hazard. The compliance officer testified that a nip point is a hazard. He opined that an employee working on the platform could accidentally contact the nip point with a tool or by slipping and falling on the platform. For that reason, the compliance officer testified that the nip point was not guarded by location.

A violation's penalty is determined by ratings for "probability" and "severity." OAR 437-001-0145. Based on consideration of the criteria listed in OAR 437-001-0135, the compliance officer assigned a probability rating of "medium" to the unguarded nip point in determining the amount of the penalty.

The ALJ agreed with the compliance officer that the nip point was a hazard. Finding that a person could inadvertently come into contact with the nip point while working on the platform and that petitioner's employee had, in fact,

inadvertently come into contact with the nip point, the ALJ determined that the nip point was not guarded by location. The ALJ upheld OR-OSHA's determination that petitioner had violated OAR 437-004-1910(4)(a)(A) by exposing employees to the hazard of an unguarded nip point.

However, the ALJ disagreed with the compliance officer's determination that the probability rating for the violation should be "medium," concluding, instead, that the violation had a low probability of occurrence and should therefore be rated as "low." Based on that determination, the ALJ reduced the penalty.

On judicial review, petitioner contends that the ALJ incorrectly interpreted OAR 437-004-1910(6) to require consideration of the injured worker's subjective intent in contacting the hazard and, further, that the order fails to articulate a rational connection between the facts and the order's legal conclusions. Petitioner's argument is partially premised on the contention that OR-OSHA misidentified the hazard. In petitioner's view, the hazard consists of both the nip point and the conveyor belt, because "the injured worker would not have 'inadvertently' come into contact with the nip point if he had not intentionally stepped on the conveyor belt." Thus, petitioner asserts, the hazard that was required to be guarded was the combination of the belt and the nip point and not the nip point alone. Petitioner further contends that, because the belt was recessed and could only be contacted deliberately and not inadvertently, the hazard was, in fact, guarded by location.

We are not persuaded by petitioner's reasoning. We reject petitioner's contention that the evidence requires the conclusion that, because the conveyor belt is recessed within the hopper, contact with the hazard could only be intentional and not inadvertent. *Webster's Third New Int'l Dictionary* 1140 (unabridged ed 2002) defines "inadvertent" as "heedless, negligent, inattentive" or "unintentional." The fact that an employee might not regularly come into contact with a hazard does not negate the possibility that the employee might come into contact with the hazard inadvertently through inattention, carelessness or such other behavior. The compliance officer testified that an employee

clearing agricultural product on the platform could slip and thereby contact the nip point or could inadvertently contact the nip point with a tool. The compliance officer did not testify that contact with the nip point could only occur through intentional contact with the conveyor belt. The compliance officer's testimony is substantial evidence in support of the ALJ's finding that the nip point could be contacted inadvertently. Our conclusion leads us to a reject petitioner's contentions that the hazard could only be contacted intentionally or that OR-OSHA should have identified the hazard as a combination of the conveyor belt and the nip point.

Petitioner contends that the ALJ erred in reasoning that the employee's subjective intent, rather than objective conditions, determines whether contact with a hazard is inadvertent. The ALJ found that, although the employee "intentionally stepped on the conveyor, his foot getting caught in the nip point was accidental or inadvertent." In petitioner's view, that statement shows that the ALJ incorrectly based his conclusion that the nip point was contacted inadvertently on the worker's subjective intent. We do not understand the order in that way. The ALJ quoted OAR 437-004-1910(6), which sets forth the objective standard that a hazard is guarded by location if, "because of its location, no employee can inadvertently come in contact with the hazard." The ALJ referred to the compliance officer's testimony that "when employees were on the hopper platform, they would be in a danger zone to the hazard." The order, when read in its entirety, shows that the ALJ knew and correctly applied the standard that objective conditions determine whether a hazard is guarded by location. The ALJ did not focus on the injured employee's intentions. Rather, it is petitioner that has unduly focused on the fact that the employee intentionally placed his foot on the conveyor belt. That fact did not negate the possibility, or the evidence, that the nip point could be contacted inadvertently. The ALJ's order is supported by substantial evidence and substantial reason, and the ALJ did not err in upholding OR-OSHA's citation for a violation of OAR 437-004-1910(4)(a)(A).

As noted, a violation's penalty is determined by its "probability" and "severity" ratings. OAR 437-001-0145. The

probability rating is "[t]he probability of an accident that could result in an injury or illness from a violation[,]" and is determined by the compliance officer, based on a number of factors. OAR 437-001-0135.[3] Here, the compliance officer determined that petitioner's violation had a probability rating of "medium," based on evidence of the number and frequency of employees working on the platform in proximity to the hazard. But the ALJ disagreed and reduced the probability rating to "low." In its cross-petition, OR-OSHA contends that the ALJ exceeded his authority in reducing the compliance officer's probability rating.

At a contested case hearing, OR-OSHA has the burden of proving "[t]he reasonableness of a contested penalty" by a preponderance of the evidence. OAR 438-085-0820(1), (3).[4] Thus, OR-OSHA's burden was to prove that the

---

[3] OAR 437-001-0135 provides:

"(1) The probability of an accident that could result in an injury or illness from a violation shall be determined by the Compliance Officer and shall be expressed as a probability rating.

"(2) The factors to be considered in determining a probability rating may include, as applicable:

"(a) The number of employees exposed;

"(b) The frequency and duration of exposure;

"(c) The proximity of employees to the point of danger;

"(d) Factors, which require work under stress;

"(e) Lack of proper training and supervision or improper workplace design; or

"(f) Other factors that may significantly affect the degree of probability of an accident occurring.

"(3) The probability rating is:

"(a) Low—If the factors considered indicate it would be unlikely that an accident could occur;

"(b) Medium—If the factors considered indicate it would be likely that an accident could occur; or

"(c) High—If the factors considered indicate it would be very likely that an accident could occur.

"(4) The probability rating may be adjusted on the basis of any other relevant facts which would affect the likelihood of injury or illness."

[4] OAR 438-085-0820 provides:

"(1) OR-OSHA has the burden of proving:

"(a) A denied violation;

"(b) The reasonableness of a contested penalty;

"(c) The reasonableness of a contested correction order.

assessed penalty was reasonable, and the ALJ, in reviewing the penalty, was limited to determining whether OR-OSHA had met its burden. OR-OSHA contends that the ALJ erred by independently determining the probability rating and, derivatively, the penalty, rather than evaluating whether OR-OSHA's determination of the probability rating was reasonable.

We agree with OR-OSHA that the ALJ exceeded his authority. It is clear from the order that the ALJ made his own determination of the probability rating:

> "[G]iven that no prior accidents occurred over the 18 years of operation before [the employee's] accident, and that the accident involved [the employee] intentionally stepping on the conveyor, I am persuaded that a 'low' probability rating is more appropriate[.]"

It was not the ALJ's responsibility to determine a probability rating, but rather to determine whether OR-OSHA's probability rating was reasonable. We therefore vacate the order and remand for reconsideration of the reasonableness of the penalty.

Penalty vacated and remanded; otherwise affirmed.

---

"(2) The party who contests a proposed OR-OSHA order that will grant, deny, modify or revoke a variance has the burden of proving that the proposed order is incorrect.

"(3) The party having the burden of proving a fact must establish it by a preponderance of the evidence."